UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Andre Mallette, Individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>v.<br><br>Waste Management of Illinois, Inc.,<br><br>   *Defendants*. | No. 24 CV 5736<br><br>Judge Lindsay C. Jenkins |

## Memorandum Opinion and Order

Plaintiff Andre Mallette, on behalf of himself and others similarly situated, sued Waste Management of Illinois, Inc. ("WM") alleging that it violated the Illinois Biometric Information Privacy Act ("BIPA") by using fingerprint timeclocks to track hours worked. Days after Mallette filed his complaint, WM notified him of several reasons why his claims lacked merit. [Dkt. 21 at 1–4.][1] On that basis, WM repeatedly asked Mallette to dismiss his case. [*Id.* at 4–5.] Mallette eventually did, on January 21, 2025. [*Id.* at 6–7.] The Court granted Mallette's motion, specifying that, since WM had answered the complaint and some discovery occurred, dismissal would be with prejudice. [Dkt. 17.] WM moved for sanctions. [Dkt. 21.] Then Mallette moved for sanctions. [Dkt. 29] For the reasons explained, both motions are denied.

## Background

In his complaint, Mallette alleged that he worked at the WM facility at 1825 E. 130th St. in Chicago from July 2019 through approximately July 20, 2020, and used his thumbprint to clock in and out and for payroll purposes. [Dkt. 1 at ¶2.] In the days after Mallette filed his complaint on July 8, 2024, WM notified Mallette that his claims had no merit and asked him to voluntarily dismiss them. [Dkt. 21 at 3–4.] On that score, WM explained (1) that the facility where Mallette allegedly worked burned down in 2018 and had been non-operational ever since, (2) WM never used biometric timeclocks anywhere in Illinois, and (3) Mallette was never employed by WM but instead assigned to WM through a staffing agency from July 2017 to December 2017 at which point he was terminated with a "no rehire" designation. [*Id.*] According to WM, this meant that, even if Mallette somehow used a biometric timeclock at WM, his claim was time-barred. [*Id.*]

---

[1]    Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

Mallette declined to dismiss his suit, reaffirmed that he used biometric timeclocks at WM in 2019 and 2020, and offered names of a few witnesses who also worked at WM during the same time. [*Id.* at 4–5.] The case proceeded, with WM's search for records related to Mallette or his witnesses' employment coming up empty. [*Id.* at 5.] WM answered the complaint, the parties exchanged Rule 26(a)(1) disclosures, and, in November 2024, WM issued a subpoena to the staffing agency that employed Mallette. [*Id.* at 6.] The agency's response confirmed neither Mallette nor his witnesses were assigned to work at a WM facility during the relevant time frame. [*Id.*] WM responded to Mallette's written discovery requests and issued written discovery to Mallette. [*Id.* at 6, 9.]

The possibility of sanctions came up at least three times between July and September 2024. It came up twice in the context of counsels' email communications regarding the basis for Mallette's lawsuit. WM's attorney explained, "We intend to aggressively seek sanctions if forced to litigate this issue." [Dkt. 21-1 at 14.] A few weeks later, also over email, WM's counsel emphasized, "My client is serious about seeking sanctions." [*Id.* at 8.] Then, in the damages section of WM's Rule 26(a)(1) disclosures, it repeated, "[g]iven Plaintiff's decision to move forward with this litigation … Defendant intends to seek sanctions against Plaintiff, including recovery of its fees and costs spent defending this lawsuit. [Dkt. 23-3 at 5.]

The parties continued litigating the case for the rest of the year until, on December 30, 2024, Mallette's lawyer emailed defense counsel informing them of his intent to voluntarily dismiss the case. [Dkt. 24-1 at 2.] WM's counsel responded asking Mallette's counsel to "[p]lease hold on this" so she could discuss with her client. [*Id.* at 1–2.] He did, following up a few weeks later on January 16, 2025. [Dkt. 24-2 at 1.]

According to Mallette's attorney, he received no response until January 21, 2025. On that date, WM's counsel sent Mallette's attorney a letter via email invoking Rule 11 and arguing that he failed to perform the requisite factual investigation prior to filing the complaint. [Dkt. 21-10 at 6.] WM asserted its entitlement to $28,000 in attorneys' fees and directed Mallette's attorney to contact opposing counsel "to arrange for dismissal of Plaintiff's Complaint with prejudice and payment of … [] attorneys' fees." [*Id.*] WM said that if they did not hear back by a certain date, they would file a motion for sanctions with the court. [*Id.*] Minutes later, Mallette filed his motion to dismiss without prejudice. [Dkt. 21 at 7.]

The next day, the Court granted the motion to dismiss, but made the dismissal with prejudice, considering that an answer had been filed and discovery was underway. [Dkt. 17.] A few hours later, WM filed an objection and asked for leave to file a motion for sanctions by February 3, 2025. [Dkt. 19.]

2

While briefing for sanctions was underway, Mallette's attorney sent an email to WM's counsel citing Rule 11 and purporting to attach a motion for sanctions. [Dkt. 29-2 at 1.] The email requested that WM withdraw their motion for sanctions, offered it 21 days to comply, and specified that if, by March 11, 2025, the motion for sanctions was not withdrawn, Mallette's attorney would file his own motion for sanctions. [*Id.*] WM did not withdraw its motion sanctions, and, as promised, Mallette filed his own motion on March 12, 2025.

Those motions are now ripe for decision.

## Standard of Review

"Federal Rule of Civil Procedure 11(b) requires attorneys to certify to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances that their filings have adequate foundation in fact and law and lack an 'improper purpose.'" *Ortiz v. Sazerac Co., Inc.*, 2024 WL 1302784, at *2 (N.D. Ill. Mar. 27, 2024) (cleaned up) (quoting *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020)). WM contends that Mallette's counsel failed to undertake a reasonable investigation prior to filing his complaint in order to ensure the factual contentions had evidentiary support. Fed. R. Civ. P. 11(b). WM also argues that Mallette's decision to continue litigating the case for five months, after being put on notice of the deficiency of his claims, merits sanctions under Rule 11. [Dkt. 21 at 2.]

Rule 11 has a "safe harbor" which allows the party or attorney facing sanctions to "cure[] the challenged filing by amendment or dismissal." *Ortiz*, 2024 WL 1302784, at *3. The rule requires motions for sanctions to be served on the opposing party at least 21 days before the motion is filed in court. *Id.* The idea is that the 21-day window allows for the parties to sort their dispute out independently, before involving the court. *See Am. Louver Co. v. Surge Control Sys., LLC*, 2007 WL 9814557, at *3 (N.D. Ill. July 12, 2007). A motion for Rule 11 sanctions cannot be filed with the court if the opposing party withdraws or corrects the offending filing within 21 days. *Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 846 (N.D. Ill. 2023).

While the federal rule requires both "a motion" and "service" of that motion on the opposing party under Rule 5, Fed. R. Civ. P. 11(c)(2), the Seventh Circuit has softened these requirements and found the safe harbor met where there is "substantial compliance." *Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 808 (7th Cir. 2003) (finding party entitled to a decision on the merits of their Rule 11 motion where they sent "a 'letter' or 'demand' rather than 'a motion'" and gave over 21 days to respond); *N. Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 888 & n.5 (7th Cir. 2017) (recognizing that while *Nisenbaum* is still the law of the Circuit, the "substantial compliance" rule is divorced from the text of Rule 11, and reliance on the "theory of substantial compliance … at least in the present landscape …. "invit[es] possible *en banc* and/or Supreme Court review").

3

While the Seventh Circuit, at least for now, permits "warning shots" via letter, the Seventh Circuit strictly enforces other aspects of the rule. *Matrix IV, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 649 F.3d 539, 552 (7th Cir. 2011); *N. Illinois Telecom, Inc.*, 850 F.3d at 882. First, to qualify as substantial compliance, the letter cannot have multiple purposes, such as letters both conveying settlement offers and threatening sanctions. *N. Illinois Telecom, Inc., N.A.*, 850 F.3d at 888; Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion …').

Second, the warning-shot/safe-harbor requirement needs to give the opposing party "the opportunity to withdraw or correct the challenged pleading." *Id.* In *Northern Illinois Telecom*, the Court found the letters insufficient where they demanded a response in five or six days. 850 F.3d at 887-888. The *Lime Crunch* court came to the same conclusion where the letter failed to "articulate a 21-day window for corrective action." *Lime Crunch Inc. v. Johansen*, 675 F. Supp. 3d 889, 897 (N.D. Ill. 2023); *Jay's Imp. & Exp., LLC v. Patel*, 2023 WL 4825627, at *4 (N.D. Ill. July 27, 2023) ("Rule 11 notice letters must explicitly offer a 21-day safe harbor in order to satisfy the substantial compliance standard."); *Traffix USA, Inc. v. Bay*, 2021 WL 5179908, at *2 (N.D. Ill. Nov. 8, 2021) (finding the letter deficient even where defendants didn't file their motion for sanctions "until forty-one days after sending the letter" where the letter did not explicitly provide for a 21-day safe harbor).

Third, the letter needs to declare an "affirmative intent to seek sanctions." *Lime Crunch Inc.*, 675 F. Supp. 3d at 897 (holding letter did not qualify as substantial compliance where it complained that the lawsuit was being pursued for an improper purpose and demanded it be withdrawn but did not specify an intent to seek sanctions).

## Analysis

With that framework clear, the Court first analyzes WM's compliance with Rule 11 and the Seventh Circuit's substantial compliance caselaw. Then it resolves the motion for sanctions filed by Mallette's counsel.

In its opening motion for sanctions, WM is not specific about what communication or communications constitute its warning shot or how it complied with Rule 11's safe harbor requirement. After Mallette opposed sanctions on that basis, [dkt. 24 at 1], WM's reply brief argues that its warning shots include the emails counsel exchanged during the summer of 2024 and the reference to pursuing sanctions included in WM's Rule 26(a)(1) disclosures. [Dkt. 28 at 2, 4.] However, WM does not address how those communications satisfied the procedural requirements including the need to explicitly offer a 21-day response window. Instead, it argues any violation of the safe harbor requirements are "curable because well-over 21 days have now passed since defendant served its Rule 11(c) letter." [*Id.* at 2, 5.]

4

It is easy to see how neither of WM's email communications concerning sanctions fit the bill. [Dkt. 21-1 at 8, 14.] To begin, in July 2024, WM's attorney explained that its research showed Mallette never worked at any MW facility, and she said: "If Plaintiff has any documentation that suggests I'm wrong about any of the above— *i.e.*, that shows he was assigned to a WM facility during the time period he claims— please send it over immediately. In the absence of any evidence, and given the information WM has provided, we intend to aggressively seek sanctions if forced to litigate this issue." [Dkt. 21-1 at 14.] Weeks later in the same email thread about the same topic, WM's attorney wrote: "… we do need resolution with some immediacy. My client is serious about seeking sanctions." [Dkt. 21-1 at 8.]

These statements strike the Court as more akin to a demand for dismissal of baseless claims than to notifying Mallette of a specific intention to seek sanctions at some specific time, *Lime Crunch Inc.*, 675 F. Supp. 3d at 897. *See also Traffix USA, Inc.*, 2021 WL 5179908, at *3 (finding that vague wording of letter, stating that counsel had been "authorized" to seek sanctions, "likely left Traffix unclear as to whether defendants were serious … and when such a motion might be filed"). Even if the representations were sufficiently specific, the email communications did not provide a specific deadline for corrective action. Courts within the Northern District take heed of "the Seventh Circuit's clearly expressed reluctance to stray further from the requirements of Rule 11" and, under that precedent, require that "Rule 11 notice letters … explicitly offer a 21-day safe harbor in order to satisfy the substantial compliance standard." *Jay's Imp. & Exp., LLC v. Patel*, 2023 WL 4825627, at *4 (citing *N. Ill. Telecom, Inc.*, 850 F.3d at 888); *see also Lime Crunch Inc.*, 675 F. Supp. 3d at 897; *Traffix USA, Inc.*, 2021 WL 5179908, at *2.

Lastly, neither the email exchanges quoted above nor the Rule 26(a)(1) disclosures[2] could fairly be characterized as WM moving for sanctions "separately from any other motion" under Rule 11(c)(2). None of these communications reference WM's intention to seek sanctions in a stand-alone document. *N. Illinois Telecom, Inc., N.A.*, 850 F.3d at 888; Fed. R. Civ. P. 11(c)(2).

Since none of these three communications to seeking sanctions qualify as a warning shot, the Court next examines what WM refers to as its Rule 11 notice letter. [Dkt. 28 at 2; Jan. 21, 2025 letter at dkt. 21-10.] Certainly, this letter is specific enough, detailing exactly what, in WM's mind, made Mallette's complaint and continued prosecution of his claims sanctionable. The problem is the letter required Mallette to respond in one week, not 21 days. [Dkt. 21-10 at 6.]

While WM asks the Court to overlook this problem, suggesting it could withdraw its motion and make another run at compliance with Rule 11, the case law suggests WM's failure to permit a three-week response window is fatal. For example,

---

[2] The Rule 26 disclosures did not specify a response date either.

in *Jay's Import & Export*, the letter demanded a response within five days. 2023 WL 4825627, at *4. Even though the party seeking sanctions filed its motion for sanctions almost seven months later, the court found that the failure to offer the requisite 21-day safe harbor in its letter was "enough to deny [the] … Rule 11 motion." *Id.* The same was true in *Traffix*, where the Court found that defendants' failure to offer a sufficient safe harbor—five days instead of 21—was an independent basis to deny the motion even where the motion for sanctions wasn't filed until 41 days after the letter was sent. 2021 WL 5179908, at *2. "[T]his [C]ourt is not inclined to award sanctions in favor of a party that cannot be bothered to follow the rules itself." *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 671 (7th Cir. 2012)

Even if the Court were inclined to overlook that error, another more fundamental problem lurks. Rule 11 explicitly provides that the motion for sanctions should not be filed where the challenged filing "is withdrawn or appropriately corrected within 21 days." Fed. R. Civ. P. 11(c)(2). Here, after months of urging Mallette to dismiss, Mallette finally said he would dismiss, but WM asked Mallette *to wait* for nearly a month before filing for dismissal, seemingly using this time to compile its Rule 11 letter. But in the end, WM got most of what it wanted—Mallette dismissed his complaint minutes after WM sent their Rule 11 letter. *See Ortiz*, 2024 WL 1302784, at *3 (denying sanction where plaintiff voluntarily withdrew their complaint within 21-day window after receiving notice letter). That is how Rule 11 is supposed to work. "To mix naval metaphors, the party seeking sanctions must first fire a warning shot that gives the opponent time to find a safe harbor." *N. Illinois Telecom, Inc., N.A.*, 850 F.3d at 882. Where the opponent avails itself of the warning shot by withdrawing the challenged filing within the 21-day window—as occurred here—sanctions are inappropriate. *Ortiz*, 2024 WL 1302784, at *3.

To sum up, the Court provided WM leave to file its motion for sanctions, but upon review of the record, sanctions are not warranted, particularly given that the case is now dismissed with prejudice. WM had ample time to make good on its threat of sanctions (and follow the procedural requirements for doing so) or even seek early resolution of this case by moving for judgment on the pleadings, something it elected not to do.

\* \* \* \* \*

Moving now to Mallette's motion for sanctions, the Court denies that motion as well. Mallette argues that sanctions are warranted because WM's sanctions motion violated Rule 11's procedural requirements, lacks merit, and was designed to harass. [Dkt. 29 at 1.] While the Court agrees that WM's motion was procedurally deficient, it was not meritless. For as much as the Court is constrained to grant WM's motion for its failure to abide by procedural requirements it is equally troubled by Mallette's counsel's failure to perform even a small amount of diligence before filing a putative class action complaint on behalf of his client. WM is correct: review of Mallette's tax

6

returns or W-2 would have been more than sufficient to dissuade prudent counsel from filing such a case. [Dkt. 21 at 7.] Given this dynamic, and the Court's considerable discretion in deciding whether to issue Rule 11 sanctions, it is not persuaded sanctions are appropriate. *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 529 (7th Cir. 2020).

## Conclusion

The motions for sanctions are denied.

Enter: 24 CV 5736
Date:　March 13, 2025

_____
Lindsay C. Jenkins
United States District Judge